UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

CITY OF PONTIAC GENERAL EMPLOYEES'                    No. 11 Civ. 5026 (JSR)(RLE)
RETIREMENT SYSTEM, Individually and on Behalf of
All Others Similarly Situated,                        ECF CASE

                                    Plaintiff,        <u>AFFIDAVIT OF</u>
                                                      <u>MARGARET C. BURNS</u>

            - v -

LOCKHEED MARTIN CORPORATION, et al.,

                                    Defendants.
-------------------------------------------------------------------x

Margaret C. Burns, being duly sworn, says:

      1.     My name is Margaret C. Burns.

      2.     I was an employee at Lockheed Martin for 29 years.  My tenure at Lockheed Martin ended in January 2011.

      3.     From August 2007 until May 2009, I served as Vice President of Information & Knowledge Solutions (I&KS) in the civil product line of Information Systems & Global Solutions (IS&GS).  After June 2009 until January 2011, I chaired non-advocate reviews on critical programs and proposals within IS&GS.

      4.     Approximately one year ago, I was contacted by a male caller.  The caller identified himself as Ken Keatly and he reached me on the telephone at my workplace.  He said his employer was a firm named LR Hodges.  I later "googled" LR Hodges and found it was a private investigation firm.  This first call lasted twenty to thirty minutes.

      5.     Mr. Keatly told me he was hired to investigate on behalf of a shareholder who wanted to bring a lawsuit.  He explained that he was interested in Lockheed Martin's 2009 first quarter and 2009 second quarter earnings' reports.  I told Mr. Keatly that I do not have general financial information about Lockheed Martin beyond the areas of my job responsibilities.

      6.     I was contacted two more times by Mr. Keatly.  The second call was very brief and may have been a voicemail informing me that the shareholder had decided to move forward with the lawsuit against Lockheed Martin.

      7.     The third call was also very brief.  Mr. Keatly informed me that his firm was required to release my name to Lockheed Martin and that I should expect a call from "the other side."  Mr. Keatly offered to have a lawyer provided to me at no cost to me.  I told him that if I chose to hire counsel, I would arrange it myself.

      8.     My personal lawyer provided me with a copy of the Pontiac Amended Complaint against Lockheed Martin.  On my own, I concluded that I am CW1 in the Amended



EXHIBIT
3
Burns
6-15-12

Complaint. I was upset when I read the Amended Complaint because the allegations contained in the Complaint are inconsistent with my experience at Lockheed Martin and report inaccurately or take out of context information I provided to Mr. Keatly in our initial telephone conversation.

9.     At no time during the initial call or in the two subsequent calls did I ever describe for Mr. Keatly my responsibilities in connection with the positions I held during my tenure at Lockheed Martin. I do not recall providing him with a general description of the positions I held during my tenure at Lockheed Martin. I never told him the names of the programs that I oversaw during my tenure as Vice President of I&KS.

10.     At no time during the initial call or in the two subsequent calls did I ever say to Mr. Keatly that Linda Gooden reported the status of IS&GS projects to Lockheed Martin's other senior executives.

11.     At no time during the initial call or in the two subsequent calls did I ever tell Mr. Keatly that the Sentinel program had problems because it had been priced at a very low rate. I did not then, and still do not now, have access to the information necessary to formulate this conclusion because I was not part of the project at the time it was bid. My later experience with this program did not provide sufficient information for me to determine whether the program was bid too low.

12.     At no time during the initial call or in the two subsequent calls did I ever tell Mr. Keatly that the Transportation Security Administration was not satisfied with the work performed by Lockheed Martin.

13.     I do recall telling Mr. Keatly during the first call that Lockheed Martin used color ratings to designate programs and that the ratings were determined by objective criteria. I also told him that Lockheed Martin itself, not the individual businesses, set the criteria. However, I did not tell Mr. Keatly that every IS&GS program was evaluated on a monthly basis.

14.     I discussed the information I swear to in this affidavit with lawyers from DLA Piper. They asked that I provide this affidavit, which I agreed to do. Other than Mr. Keatly, my personal lawyer and lawyers from DLA Piper, I have not discussed the Pontiac case against Lockheed Martin with anyone.

Dated: May _, 2012

Margaret C. Burns

Sworn to before me this 18th

Day of MAy , 2012 .

Rebecca Finkelman

Notary Public

REBECCA A FINKELMAN
Notary Public-Maryland
Frederick County
My Commission Expires
June 30, 2014

2