# Exhibit T

```
                                                                   1
     C7P4PONC
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2    CITY OF PONTIAC GENERAL
3    EMPLOYEES' RETIREMENT SYSTEM,
3    individually and on behalf of
4    all others similarly situated,
4                 Plaintiffs,
5
5           v.                              11CV5026(JSR)
6
6    LOCKHEED MARTIN CORPORATION,
7    ROBERT STEVENS, BRUCE TANNER,
7    and LINDA GOODEN,
8                 Defendants.
8    ------------------------------x
9
9                                           New York, N.Y.
10                                          July 25, 2012
10                                          5:15 p.m.
11   Before:
11
12                      HON. JED S. RAKOFF
12
13                                 District Judge
13
14                      APPEARANCES
14
15   ROBBINS GELLER RUDMAN & DOWD
15        Attorneys for Plaintiffs
16   SAMUEL H. RUDMAN
16   JONAH H. GOLDSTEIN
17   EVAN J. KAUFMAN
17
18   DLA PIPER
18        Attorneys for Defendants
19   JAMES D. WAREHAM
19   JOHN M. HILLEBRECHT
20   JOHN VUKELJ
20
21   ALSO PRESENT:
21   Michael Torres, Audio-Visual Technical Assistant
22
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
                                                                    16
     C7P4PONC
 1   evidence from them whatsoever, none.  And now we are going to
 2   say keep fishing, depose a bunch of people.
 3            THE COURT:  I do want to find out, I think that's a
 4   fair point, I do want to find out what other discovery the
 5   plaintiff has in mind.  Why don't I interrupt you for a minute
 6   and come back in a few minutes.  Let me hear from plaintiffs'
 7   counsel.
 8            MR. RUDMAN:  I'll stay right here because I think it's
 9   relatively brief.  The discovery, first, the document
10   discovery, your Honor, is not complete.  Defendants are still
11   producing documents to us.  We have maybe 850,000 pages that
12   have been produced; over a quarter of them were produced in the
13   last few weeks.  We think there are significant holes in the
14   production.  We have disputes with defendants about certain
15   aspects of the production, the scope, the time periods of the
16   production, custodians of information, search terms.
17            Many of the documents defendants are producing don't
18   have custodial information.  It's very difficult for us, or
19   vague custodial information, to determine who had this
20   document, where did it come from.  We have not burdened the
21   court with any of these issues in terms of motion to compel
22   which we think is appropriate because we have been dealing with
23   this motion, trying to work these things out with defendants.
24   They still have not given us a commitment as to the entire
25   scope of the production.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                17
     C7P4PONC
 1              THE COURT:  Let me tell you first that discovery date
 2   will not, cutoff date will not move.  So I am all for you
 3   working things out among yourselves but if you can't, you'd
 4   better not leave to the last minute coming to this court to
 5   resolve any discovery disputes, because I am not going to move
 6   the discovery cutoff.
 7              MR. RUDMAN:  I understand that, your Honor.  We were
 8   expecting after this motion, after the hearing on this motion,
 9   to start working towards building, going through our case in
10   discovery.
11              THE COURT:  Let me ask you while you are up, there is
12   one fact here that I am sorry to say casts in doubt counsel's
13   credibility as opposed to the credibility of anyone else.
14   That's the sentence I read before from paragraph 36 of the
15   complaint.  It is an important sentence.  It's the one the
16   court relied on in its opinion dismissing the motion to
17   dismiss.  It says, quote, according to CW-2, defendants Stevens
18   and Tanner received information about IS&GS directly from
19   defendant Gooden and Gooden's finance manager Jeff McLaughlin,
20   close quote.
21              But your investigator's memorandum, I am now quoting
22   from a copy of it, the relevant page is Pontiaco 15475, has
23   CW-2 stating, quote, she surmised that while Stevens primarily
24   got his information from Linda Gooden and that Bruce Tanner got
25   his information from Linda Gooden's finance manager whom she
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                   18
      C7P4PONC
 1    was willing to confirm was Jeff McLaughlin, close quote.  So
 2    she is expressing a speculation to your investigator and that
 3    by the time it becomes an allegation of the complaint
 4    attributed directly to her, it is no longer surmise but a fact.
 5             So how do you explain that.
 6             MR. RUDMAN:  The only way I can explain it, judge,
 7    because I can't go back in time and recall what took place in
 8    drafting of the complaint, is that --
 9             THE COURT:  Who drafted this complaint.
10             MR. RUDMAN:  I did and Mr. Kaufman did -- is that the
11    allegation that, the facts that were in the investigator memo
12    provided a reasonable basis for that allegation, given
13    Ms. Hawn's position and the other things she told him.
14             THE COURT:  That's not what the complaint says.  If
15    complaint had said, based on all the information we have
16    received, it is a reasonable inference that blah, blah, blah,
17    that's one thing, but the complaint says, quote, according to
18    CW-2.  It wasn't according to CW-2.
19             MR. RUDMAN:  I understand that, your Honor.  I mean,
20    the memo says what it says, the investigator notes say what
21    they say, the complaint says what it says.  I can tell you why
22    I believe it says that but I can't change the words.  There was
23    no intention to mislead the court or misstate anything.
24             THE COURT:  I understand you are on the spot, but in
25    fact the court did expressly rely on that sentence because it
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                      19
         C7P4PONC
 1       took it to be what it said.  Now should I grant the motion for
 2       reconsideration.
 3                MR. RUDMAN:  No you should not grant the motion for
 4       reconsideration, your Honor.
 5                THE COURT:  Should I grant the motion for
 6       reconsideration on the grounds that the court was intentionally
 7       or completely intentionally, materially misled by the
 8       allegations in the complaint.
 9                MR. RUDMAN:  No.
10                THE COURT:  Why not.
11                MR. RUDMAN:  Because, first of all, all the other
12       things that are alleged in the complaint that you relied on.
13       This is not only --
14                THE COURT:  This is the only one I know so far can't
15       be right, but there, according to your adversary, may be
16       hundreds of other things.
17                MR. RUDMAN:  Right, according to him it's all wrong.
18       There are a lot of other things alleged in the complaint that
19       your Honor relied on in his opinion that support the claim.
20       This is only one allegation.  Although it's somewhat important,
21       what is in the witness memo and the investigator notes, other
22       than word directly, does not directly contradict the
23       information.  Given Ms. Hawn's position in the company as it
24       was represented to the investigator and the other things
25       Ms. Hawn told Mr. Keatly, I would submit to the court that this
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                   20
         C7P4PONC
 1       is a reasonable allegation based on the things that she said,
 2       the things Mrs. Hawn said to the investigator.
 3                There is another reason why you shouldn't grant the
 4       motion for reconsideration, because it's not proper, we are not
 5       in the proper context for that.  We got into a discussion of
 6       the policy issues, Mr. Wareham did.  What happens in a case
 7       like this, you conduct an investigation.  There is a discovery
 8       stay.  We can't get documents like it used to be prior to the
 9       change in law to help in the aid and drafting of the complaint.
10       So we hire an investigator who goes out and interviews former
11       employees.  We make allegations in the complaint based on what
12       those employees tell us.
13                Sometimes courts look at the complaints and they say
14       those allegations are no good.  Other times they look at the
15       complaints and they say those allegations are perfectly fine
16       based on what you have alleged this person told you.  That's
17       what we did in this case.  We hired Mr. Keatly, conducted an
18       investigation.  He told us the witnesses said these things.  We
19       faithfully put those things in the complaint.  Is there a
20       mistake, an inadvertent mistake or the use of not the exact
21       language of Mr. Keatly's memo from Mr. Keatly's memo to the
22       complaint, yes.  Do I regret that, yes, I do.
23                But it's a fair, when you read the entirety of
24       Mrs. Hawn's memo and the things that are alleged in the
25       complaint with respect to her, it's a fair allegation that she
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                     21
     C7P4PONC
 1   was in a position to know the things that we alleged that she
 2   knew, which was that if you work somewhere for a long time, you
 3   are in a certain position and someone says to you where did
 4   they get their information from, she certainly could say
 5   sometimes they got it from this person and that person.  The
 6   problem is here the word directly.  I don't think removing that
 7   word, removing that allegation --
 8            THE COURT:  I am sorry, I come back to what I said
 9   before.  There is in this court's view a very substantial
10   difference between a statement that so-and-so surmised that
11   somebody happened and a statement that I know it happened
12   because I was there.  For example, if CW-2 were a witness at
13   trial and she were asked did you witness the exchange of
14   information between defendant Gooden and defendant Stevens
15   about IS&GS on the relevant aspects of this paragraph, she
16   would say no.  If she were then asked, well, based on all the
17   facts and circumstances known to you, did you surmise that such
18   a conversation took place.  Your adversary would then say
19   objection and I would say sustained.  There is no way that
20   would come into evidence.  So, there is a very big difference
21   between these two situations.
22            MR. RUDMAN:  I understand what you are stating, your
23   Honor.  Your question to me was should you reconsider your
24   decision.  My answer to that is no.  Even if the court were to
25   disregard this allegation, based on your opinion, there are
                   SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

```
                                                                     22
        C7P4PONC
 1      many other allegations in the complaint to support the stating
 2      of the claim.
 3              THE COURT:  Let me go back to defense counsel and I
 4      know there are many other things on this motion that both of
 5      you presumably want to be heard on but I really am
 6      sufficiently, what can I say, disturbed by the situation that I
 7      really don't want to hear much more.  Let me hear on the
 8      immediate issue of whether the court should or should not grant
 9      this motion for reconsideration for summary judgment, let me
10      from movants' counsel one more time.
11              MR. WAREHAM:  We believe like Campo and like Lavonia,
12      it should be dismissed on reconsideration.  It could also be
13      done under Rule 56.  Plaintiffs have not come forward with any
14      specific proffer of Rule 56 to explain how they can replace
15      this lost evidence, because again it's all hearsay.  What we
16      have is evidence the court is going to challenge.  That's a
17      separate thing.  The question of who lied and when is separate
18      to whether they can come forward with any specific proffer
19      under Rule 56.  They cannot.
20              If you look at the Santos case, there was a sworn
21      affidavit that was withdrawn and summary judgment was granted,
22      because there was existing no admissible evidence whatsoever.
23      Mr. Rudman talks about, well, I know we got 827,900 pages, but
24      we don't have all the documents.
25              THE COURT:  He said he only got some in the last two
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                    23
         C7P4PONC
 1       weeks.
 2                 MR. WAREHAM:  He got all of the critical documents,
 3       the first 17 most important witnesses, months ago.  He knows we
 4       wanted the court and we wanted the plaintiffs to see there was
 5       no case here.  We are thrilled by the fact that plaintiffs
 6       decided to move beyond the pleadings to put in 5 exhibits so we
 7       can put it 10 exhibits and say the senior people at IS&GS as
 8       late as June 11, 2011 were telling Bruce Tanner and senior
 9       people at corporate they were within $5 million for the 09
10       year, May, June, all the way into July.
11                 When you see the evidence of when Mr. Tanner learns,
12       which is in emails in our exhibits, when you see when Mr.
13       Stevens learns, when you see there is no red programs in April,
14       the record is clear, they don't want to put those documents in
15       because they establish there has never been a case here.  We
16       produced all the senior people's document, McLoughlin,
17       Lubniewski, Asbury, Tanner, Stevens, all at the front end,
18       because we tried to explain there is no case here.
19                 We were puzzled beyond belief how this woman Hawn
20       could even come into this case.  We put an affidavit in the
21       reply that shows she has nowhere near the access to anything
22       that should have led the investigator to put so much emphasis
23       on her.  At one point in time, the complaint alleges she was
24       asked to suppress her 2.5 billion worth of backlog.  This is a
25       $12.5 billion business.  Could the investigator really believe
                       SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```