UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CITY OF PONTIAC GENERAL
EMPLOYEES' RETIREMENT SYSTEM,
Individually and on Behalf of All Others
Similarly Situated,

                  Plaintiff,

    vs.

LOCKHEED MARTIN CORPORATION, et
al.,

                  Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:11-cv-05026-JSR

CLASS ACTION

LEAD PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT

807335_1

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................................... 1

II.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .................. 5

        A.      The Standards for Reviewing a Proposed Settlement for Preliminary
                Approval ................................................................................................... 6

        B.      Preliminary Approval of the Settlement Should Be Granted ................................. 7

                1.      The Complexity, Expense, and Likely Duration of the Litigation
                        Supports Approval of the Settlement.......................................................... 8

                2.      The Reaction of the Class to the Settlement................................................. 9

                3.      The Stage of the Proceedings .................................................................. 9

                4.      The Risk of Establishing Liability and Damages ....................................... 10

                5.      The Risks of Maintaining the Class Action Through Trial ........................... 11

                6.      The Ability of Defendants to Withstand a Greater Judgment .................. 11

                7.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation ....................................... 11

III.    THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE
        FORM OF THE PROOF OF CLAIM AND RELEASE ARE APPROPRIATE .............. 13

        A.      The Scope of the Notice Program Is Adequate ...................................................... 13

        B.      The Proposed Form of Notice Comports With the Requirements of Due
                Process, the Private Securities Litigation Reform Act of 1995, and Rule 23
                and Is the Same or Similar to the Form(s) of Notice Routinely Approved
                by Courts in This Jurisdiction.................................................................. 14

IV.     PROPOSED SCHEDULE........................................................................................ 15

V.      CONCLUSION ....................................................................................................... 16

807335_1

# TABLE OF AUTHORITIES

Page

## CASES

*Allen v. Dairy Farmers of Am., Inc.*,
   No. 5:09-cv-230, 2011 WL 1706778
   (D. Vt. May 4, 2011) ...................................................................................6, 7

*Chatelain v. Prudential-Bache Sec.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ..................................................................7

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ............................................................................11

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..............................................................5, 8, 10, 11

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ..................................................................11

*Hicks v. Stanley*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792
   (S.D.N.Y. Oct. 24, 2005) .................................................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984),
   *aff'd*, 818 F.2d 145 (2d Cir. 1987) ................................................................12

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 Civ. 1597 (WHP), 2004 WL 2750089
   (S.D.N.Y. Dec. 2, 2004) .............................................................................8, 10

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   No. MDL 1500, 2006 WL 903236
   (S.D.N.Y. Apr. 6, 2006) ........................................................................8, 10, 12

*In re Bear Stearns Cos.*,
   No. 08 MDL 1963, 2012 U.S. Dist. LEXIS 161269
   (S.D.N.Y. Nov. 9, 2012) ..................................................................................5

*In re Currency Conversion Fee Antitrust Litig.*,
   No. 01 MDL 1409, 2006 WL 3247396
   (S.D.N.Y. Nov. 8, 2006) ..................................................................................6

*In re Enron Corp. Sec.*,
   228 F.R.D. 541 (S.D. Tex. 2005) ..................................................................12

- ii -

Page

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510, 2007 WL 1191048
    (E.D.N.Y. Apr. 19, 2007) ....................................................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................10, 11, 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 WL 22244676
    (S.D.N.Y. Sept. 29, 2003) ....................................................................................................12

*In re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ..............................................................................................8

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    No. CV01-3285 (JBW)(MDG), 2005 WL 3046686
    (E.D.N.Y. Nov. 15, 2005) ....................................................................................................13

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV-93-5904, 1997 WL 33320580
    (E.D.N.Y. Dec. 26, 1997) ......................................................................................................6

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474
    (S.D.N.Y. Feb. 1, 2007) ......................................................................................................13

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................................11

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................................7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................................................6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................................7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y. 1996), *aff'd sub nom.*
    *Toland v. Prudential Sec. P'ship Litig.*,
    107 F.3d 3 (2d Cir. 1996) ....................................................................................................13

- iii -

**Page**

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962 (RCC), 2006 WL 3498590
   (S.D.N.Y. Dec. 4, 2006) ....................................................................................14

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 WL 5110904
   (S.D.N.Y. Nov. 20, 2008)....................................................................................5

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ...............................................................................12

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ...................................................................................6

*Weigner v. New York*,
   852 F.2d 646 (2d Cir. 1988) ...............................................................................13

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) .................................................................................14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b) ...................................................................................................................2
   §78t(a) ...................................................................................................................2
   §78t(b) ...................................................................................................................2
   §78u-4(a)(7)(A)-(F) .............................................................................................15

Federal Rules of Civil Procedure
   Rule 23.............................................................................................................13, 14
   Rule 26(a) ..............................................................................................................3

17 C.F.R.
   §240.10b-5 ............................................................................................................2

**SECONDARY AUTHORITIES**

Dr. Jordan Milev, Robert Patton, Svetlana Starykh, and
Dr. John Montgomery, *Recent Trends in Securities Class Action Litigation:*
*2011 Year-End Review, Pace of Overall Filings Holds Steady; Suits Against*
*Chinese Companies Surge* (NERA December 14, 2011) ........................................12

807335_1

**Page**

*Manual for Complex Litigation*  (4th ed. 2004)
 §21.632 ................................................................................................................6

*Manual for Complex Litigation* (3d ed. 1995)
 §30.41 ..................................................................................................................6

807335_1

Lead Plaintiff City of Pontiac General Employees' Retirement System ("Lead Plaintiff" or "Pontiac") respectfully submits this memorandum in support of its unopposed motion for preliminary approval of the settlement reached in the above-captioned litigation (the "Settlement"). This proposed Settlement provides a recovery of $19,500,000 in cash to resolve this securities class action against all defendants: Lockheed Martin Corporation ("Lockheed Martin" or the "Company"), Robert Stevens, Bruce Tanner and Linda Gooden (the "Individual Defendants" and collectively, "Defendants"). The Settlement is contained in a Settlement Agreement entered into by all parties dated February 15, 2013 (the "Stipulation").[1]

By this motion, Lead Plaintiff seeks entry of an order: 1) granting preliminary approval of the proposed Settlement; 2) approving the form and manner of giving notice of the proposed Settlement to the Class; and 3) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto (the "Notice Order"). As shown below, the proposed Settlement is a very good result for the Class under the circumstances, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants approval of this Court.

## I.    INTRODUCTION

This litigation arises out of Lead Plaintiff's allegations that between April 21, 2009 and July 21, 2009 Defendants made false and misleading statements about the performance of Lockheed Martin's Information Systems & Global Services ("IS&GS") division, and failed to disclose that

---

[1]    Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation.

807335_1

there were serious problems with the performance and growth of the division that affected Lockheed Martin's 2009 projections.[2]

On July 20, 2011, Lead Plaintiff filed a class action complaint against Defendants in the United States District Court for the Southern District of New York (the "Court") alleging violations of the federal securities laws. On October 6, 2011, Lead Plaintiff filed an amended complaint (the "Amended Complaint") (which was subsequently corrected on November 19, 2012). On November 7, 2011, the Court appointed Pontiac as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel ("Lead Counsel"). The Amended Complaint asserts claims under §§10(b), 20(a) and 20(b) of the Securities Exchange Act of 1934 (15 U.S.C. §§78j(b), 78t(a) and 78t(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

In its Amended Complaint, Lead Plaintiff further alleged that Defendants failed to disclose numerous material adverse facts regarding IS&GS that they knew or recklessly disregarded, including that: (1) Lockheed Martin overstated its 2009 financial projections; (2) IS&GS had submitted "lowball" bids to win contracts at the expense of margin and profits; (3) there were performance problems with major IS&GS projects during the Class Period; and (4) because of these performance issues, Lockheed Martin would not be receiving anticipated award fees. As a result, Lockheed Martin reported disappointing second quarter profit results for IS&GS and revised projections for IS&GS significantly downward for full year 2009, causing Lockheed Martin's stock to decline from $82.11 to $75.13 in one trading day.

---

[2] After the Class Period, the name of IS&GS was changed to Information Systems & Global **Solutions**. Lead Plaintiff will refer to it as "IS&GS" throughout this memorandum.

807335_1

On December 7, 2011, Defendants moved to dismiss the Amended Complaint. Lead Plaintiff opposed the motion. On February 14, 2012, the Court issued its Order denying in part and granting in part Defendants' motions. Specifically, the Court sustained Lead Plaintiff's §10(b) claims and dismissed Lead Plaintiff's §§20(a) and 20(b) claims. On July 13, 2012, the Court issued its Opinion explaining its reasoning for the rulings made in its February 14, 2012 Order. Defendants answered the Amended Complaint on March 1, 2012.

The parties exchanged initial disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure on March 7, 2012 and discovery commenced. Over the course of discovery, the Defendants and sixteen non-parties produced nearly one million pages of documents in response to Lead Plaintiff's discovery requests, which were reviewed and analyzed by Lead Counsel, and Lead Plaintiff produced over 15,000 pages of documents in response to Defendants' discovery requests. The parties served and responded to interrogatories. On May 2, 2012, Lead Plaintiff filed its motion for class certification. A representative of Lead Plaintiff and four other witnesses were deposed by Defendants and Defendants filed an opposition to Lead Plaintiff's motion for class certification on May 23, 2012. Lead Plaintiff filed its class certification reply brief on June 13, 2012. A hearing on Lead Plaintiff's class certification motion took place on June 20, 2012 and the Court issued an Order certifying the class, appointing Pontiac as Class Representative and Robbins Geller as Class Counsel, on December 13, 2012.

On June 25, 2012, Defendants filed a motion for summary judgment related to allegations in the Amended Complaint attributed to certain confidential witnesses cited to therein ("Summary Judgment I"). Lead Plaintiff filed an opposition to Defendants' motion for Summary Judgment I on July 19, 2012. Defendants filed their Summary Judgment I reply brief on July 24, 2012. A hearing on Defendants' motion for Summary Judgment I took place on July 25, 2012. On October 1, 2012,

- 3 -

the Court held an evidentiary hearing during which certain confidential witnesses referenced in the Amended Complaint testified, along with Lead Plaintiff's investigator. Thereafter, the parties submitted supplemental briefing. On December 13, 2012, the Court issued its Order denying Defendants' motion for Summary Judgment I.

On December 6, 2012, the parties attended a mediation session with the Honorable Daniel Weinstein (Ret.), and although no agreement was reached, the parties continued their negotiations with the assistance of the mediator. As a result of those further discussions led by the mediator, on December 14, 2012, the parties reached an agreement-in-principle to resolve the Action and entered into a memorandum of understanding setting forth the basic terms of the settlement.

In addition to discovery related to class certification and the confidential witness issue raised in Defendants' Summary Judgment I, between May 2012 and the middle of October 2012, the parties deposed over nineteen individuals, including each of the Individual Defendants as well as four expert witnesses. After the close of fact discovery, Defendants filed a memorandum in support of their motion for summary judgment related to the merits of the case on November 19, 2012 ("Summary Judgment II"). The parties entered into a memorandum of understanding to settle the Action while Lead Plaintiff was preparing its opposition to Defendants' motion for Summary Judgment II. Further briefing on Defendants' Summary Judgment II motion was stayed by Order of the Court on December 17, 2012 due to the proposed settlement of this Action.

Had the parties not reached an agreement to settle this Action, there existed a strong possibility that the Court would have granted Defendants' pending summary judgment motion. Though Lead Plaintiff was confident in its allegations, Defendants have asserted from the commencement of this litigation that there were no misstatements and, that even if there were actionable statements, such statements were not made with the requisite scienter. Even though the

- 4 -

parties had completed fact and expert discovery, pretrial preparation and the trial itself would require the parties to expend numerous hours and substantial expenses – as well as the Court to expend substantial judicial resources deciding the summary judgment motion and/or presiding over a trial. Further, the parties had each retained two experts and filed expert reports on the issues of loss causation, damages and accounting practices. The high degree of uncertainty involved in such a "battle of the experts" confirms that the Class is by no means assured of a ruling in their favor. *See, e.g., In re Bear Stearns Cos.*, No. 08 MDL 1963, 2012 U.S. Dist. LEXIS 161269, at *18 (S.D.N.Y. Nov. 9, 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Thus, when viewed in light of the risks that Lead Plaintiff would not prevail on summary judgment, trial or a possible appeal, the Settlement represents a very good result for the Class. The Settlement also saves the Class the considerable expense and delay posed by continued litigation.

## II.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

As discussed herein, the proposed Settlement is a very good result for Lead Plaintiff and the Class. The Settlement provides a recovery in a case where Lead Plaintiff faced hurdles to proving liability and damages, and is certainly within the range of what would be determined to be fair, reasonable, and adequate. Accordingly, Lead Plaintiff respectfully submits that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of this Settlement. *See also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that

807335_1

the proposed settlement fits "within the range of possible approval'" to proceed.") (citations omitted).

A.    **The Standards for Reviewing a Proposed Settlement for Preliminary Approval**

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ*") ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. . . . In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice."). "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'" *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011) (citation omitted).  Courts are afforded wide discretion in determining which information to consider at this preliminary stage, and this initial assessment can be made on the basis of information already known to the court. *Manual for Complex Litigation* §21.632 (4th ed. 2004).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted. *See NASDAQ*, 176 F.R.D. at 102 (citing *Manual for Complex Litigation* §30.41 (3d ed. 1995)); *Currency Conversion*, 2006 WL 3247396, at *4; *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997)

- 6 -

("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement[]"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval.'") (citation omitted).  Here, the parties mediated in front of the Honorable Daniel Weinstein (Ret.), a well-respected mediator with significant experience in securities class actions.

"Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members." *Allen*, 2011 WL 1706778, at *2.  "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . Settlement can voice those objections." *Id.*  A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

## B.      Preliminary Approval of the Settlement Should Be Granted

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

- 7 -

*Grinnell*, 495 F.2d at 463 (citations omitted).  For the following reasons, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

    **1.**    **The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement**

Courts have consistently recognized the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially where the settlement being evaluated is a securities class action.  *See, e.g., Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at \*6 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at \*2 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties").  *See also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This case is no exception.  Lead Plaintiff advanced numerous complex legal and factual issues under the federal securities laws, each of which would require extensive testimony by both fact and expert witnesses.  Even though fact and expert discovery has been completed, the parties were in the process of briefing summary judgment and were on the eve of a great deal of trial preparation when the settlement was struck.  "'[A] vast amount of additional factual and expert discovery remains to prepare for trials, and motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable.'" *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009) (citation omitted).  This trial would be very complicated for jurors, and would be expensive for the Class.  The Settlement also obviates the need for the Court to rule on Defendants' summary judgment motion, which was pending at the time the Settlement was reached.

- 8 -

*See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

### 2.    The Reaction of the Class to the Settlement

Lead Plaintiff has participated throughout the prosecution of its claims and was actively involved in the decision to enter into the Settlement with Defendants.   Notice regarding the Settlement has not yet been mailed or otherwise distributed.   In the event any objections are received after notice is disseminated, however, they will be addressed by Lead Counsel in connection with the motion for final approval of the Settlement.

### 3.    The Stage of the Proceedings

The volume and substance of Lead Plaintiff's and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement.

This knowledge is based, first and foremost, on Lead Plaintiff's and Lead Counsel's extensive investigation during the prosecution of this Action, including, *inter alia*: (i) review of Lockheed Martin's press releases, public statements, U.S. Securities and Exchange Commission ("SEC") filings, regulatory filings and reports, and securities analysts' reports and advisories about the Company; (ii) review of media reports about the Company; (iii) facilitating interviews with former employees of the Company; (iv) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (v) briefing the oppositions to the motions to dismiss, the motion for class certification and the oppositions to Defendants' summary judgment motions; (vi) preparing a mediation statement and conducting a mediation session; (vii) reviewing

- 9 -

and analyzing almost one million pages of documents produced by Defendants and sixteen non-parties; (viii) conducting numerous depositions; (ix) defending the depositions of Lead Plaintiff's representative and four other witnesses; (x) overseeing Lead Plaintiff's production of over 15,000 pages of documents; (xi) consultation with experts; and (xii) negotiating this Settlement with Defendants. The accumulation of the information found in the above sources permitted Lead Plaintiff and Lead Counsel to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had adequate information about their claims"). Therefore, this Court should find that this factor also supports the Settlement.

### 4. The Risk of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. As this case amply demonstrates, securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 WL 2750089, at *2 (finding that issues present in securities action presented significant hurdles to proving liability).

While Lead Plaintiff believes that its claims would be borne out by the evidence, it also recognizes that it faces hurdles to proving liability. Defendants have articulated defenses to Lead Plaintiff's allegations that may have been accepted by the Court at the summary judgment stage or by the jury at trial. Among other things, Defendants claim that Lead Plaintiff will be unable to prove that they acted with scienter, because the allegations based upon confidential sources were not

- 10 -

supported by sufficient detail, and that even if they were, they would not give rise to a strong inference of scienter on the part of anyone responsible for issuing the allegedly fraudulent statements at issue in the case. If Lead Plaintiff could not prove scienter, its entire case would be lost.

### 5. The Risks of Maintaining the Class Action Through Trial

Even though the Court has already certified a Class, certification can be reviewed and modified at any time before trial. Thus, there is always a risk that this Action, or particular claims, might not be maintained as a class through trial. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). Thus, this factor weighs in favor of the Settlement.

### 6. The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors. *See In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'") (quoting *Global Crossing*, 225 F.R.D. at 460). Courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and in fact, the ability of defendants to pay more money does not render a settlement unreasonable. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

- 11 -

weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

(E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).   The Court need only determine whether the

Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of

law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global

Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in

[the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy

Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29,

2003) (noting few cases tried before a jury result in full amount of damages claimed).   In addition, in

considering the reasonableness of the Settlement, the Court should consider that the Settlement

provides for payment to the Class now, rather than a speculative payment many years down the road.

*See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning

interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial

recovery").   Nevertheless, this Settlement represents a very good result under the circumstances

considering the procedural posture of the case.   As the court stated when approving one of the

settlements in the Enron ERISA litigation:  "The settlement at this point would save great expense

and would give the Plaintiffs hard cash, a bird in the hand." *In re Enron Corp. Sec.*, 228 F.R.D. 541,

566 (S.D. Tex. 2005).   This Settlement, which represents approximately 10.3% of Lead Plaintiff's

estimate of maximum provable damages of $188 million suffered by purchasers of Lockheed Martin

common stock, far exceeds the median settlement recovery of 2.4% (in 2010) and 1.3% (in 2011).

Dr. Jordan Milev, Robert Patton, Svetlana Starykh, and Dr. John Montgomery, *Recent Trends in

Securities Class Action Litigation:  2011 Year-End Review, Pace of Overall Filings Holds Steady;

Suits Against Chinese Companies Surge* at 24, Figure 30 (NERA December 14, 2011).

807335_1

III.   **THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM AND RELEASE ARE APPROPRIATE**

A.   **The Scope of the Notice Program Is Adequate**

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007). It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id.* (citing *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988)). In fact, notice programs such as the one proposed by Lead Counsel have been approved as adequate under the Due Process Clause and Rule 23 in a multitude of class action settlements. *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *11 (E.D.N.Y. Apr. 19, 2007) (approving proposed notice program where notice mailed to shareholders of record listed on transfer records and to "more than 2,500 of the largest banks, brokerages, and other nominees"); *In re Luxottica Grp. S.p.A. Sec. Litig.*, No. CV01-3285 (JBW)(MDG), 2005 WL 3046686, at *1-*2 (E.D.N.Y. Nov. 15, 2005) (approving notice program, consisting of broker mailing and summary notice publication in *The Wall Street Journal* and *The New York Times*); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996). Here, by consulting with counsel for

- 13 -

Lockheed Martin and the transfer agent (through counsel for Lockheed Martin), Lead Counsel is ensuring that every known avenue for obtaining the identity of Class Members is being utilized to disseminate the Notice. Therefore, it is reasonable to conclude that the Notice will reach the vast majority of the Class Members. Lead Counsel respectfully submits that the proposed notice program, as set forth in the Notice Order, is adequate and should be approved by the Court.

**B.**      **The Proposed Form of Notice Comports With the Requirements of Due Process, the Private Securities Litigation Reform Act of 1995, and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved by Courts in This Jurisdiction**

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006). *See also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the settlement notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'") (citation omitted).

Specifically with respect to cases filed under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel for

- 14 -

the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See* Notice, Exhibit A-1 to the Stipulation. The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to exclude themselves from the Settlement, or to object to any aspect of the Settlement. Furthermore, the Notice provides recipients with the contact information for the claims administrator, Gilardi & Co. LLC, and Lead Counsel. Finally, the proposed format is the same or similar to formats that have been approved by many other courts in this jurisdiction, including this Court. Therefore, Lead Counsel respectfully submits that the Court should approve the form of notice.

## IV.   PROPOSED SCHEDULE

If the Court grants preliminary approval of the proposed Settlement, the parties respectfully submit the following procedural schedule for the Court's review:

| Event | Time for Compliance |
|---|---|
| Deadline for Lockheed Martin to provide transfer records | 10 calendar days after entry of the Notice Order |
| Deadline for mailing the Notice and Proof of Claim and Release form to Class Members (the "Notice Date") | 20 calendar days after entry of the Notice Order |
| Deadline for publishing the Summary Notice in *Investor's Business Daily* and over the *Business Wire* | 10 calendar days after the Notice Date |
| Deadline for filing Proof of Claim and Release forms | 90 calendar days after the Notice Date |

807335_1

| Event | Time for Compliance |
|---|---|
| Deadline for submitting exclusion requests or objections | 55 calendar days after the Notice Date |
| Filing of memoranda in support of approval of the Settlement and Plan of Distribution, or in support of Lead Counsel's application for an award of attorneys' fees and expenses | 35 calendar days after the Notice Date |
| Filing of reply memoranda in support of the Settlement and Plan of Distribution, or in support of Lead Counsel's application for an award of attorneys' fees and expenses | 14 calendar days before the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days following execution of the Notice Order, or later at the Court's convenience |

Certain of the events set forth above are tied to the date on which the Settlement Hearing will be held, which the parties respectfully request to be scheduled for approximately 90 days after the entry of the Notice Order.

## V.    CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter the Notice Order in connection with the settlement proceedings, which will provide (i) preliminary approval of the Settlement; (ii) approval of the form and manner of giving notice of the Settlement to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

DATED:  February 19, 2013                Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          EVAN J. KAUFMAN
                                          MARK S. REICH
                                          MICHAEL G. CAPECI

                                                        s/ Samuel H. Rudman
                                            SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
mreich@rgrdlaw.com
mcapeci@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
JONAH H. GOLDSTEIN
ROBERT R. HENSSLER, JR.
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDI D. BANDMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI 48075-8412
Telephone:  248/746-0700
248/746-2760 (fax)

Additional Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 19, 2013.

s/ Samuel H. Rudman
SAMUEL H. RUDMAN

ROBBINS GELLER RUDMAN
   & DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

E-mail: srudman@rgrdlaw.com

807335_1

# Mailing Information for a Case 1:11-cv-05026-JSR

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Randi Dawn Bandman**
  randib@rgrdlaw.com

- **Margaret Collins Burns**
  burnsp@me.com

- **Michael Gerard Capeci**
  mcapeci@rgrdlaw.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com

- **Robert R. Henssler , Jr**
  bhenssler@rgrdlaw.com

- **John Michael Hillebrecht**
  john.hillebrecht@dlapiper.com,colleen.meringolo@dlapiper.com

- **Francis P. Karam**
  frank@fkaramlaw.com

- **Evan Jay Kaufman**
  ekaufman@rgrdlaw.com

- **Roy Ira Niedermayer**
  rniedermayer@paleyrothman.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mark Samuel Reich**
  mreich@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James D. Wareham**

james.wareham@dlapiper.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
James E. Anklam
DLA Piper LLP (US)
500 Eighth Strret, N.W.
Washington, DC 20004
```