```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

CITY OF PONTIAC GENERAL EMPLOYEES'
RETIREMENT SYSTEM,

                Plaintiff,

        v.                              11 CV 5026(JSR)

LOCKHEED MARTIN CORP., et al.

                Defendants.
------------------------------------x
                                        New York, N.Y.
                                        March 14, 2013
                                        4:30 p.m.
Before:

                    HON. JED S. RAKOFF

                                        District Judge

                         APPEARANCES

ROBBINS GELLER RUDMAN & DOWD LLP
     Attorneys for Plaintiff
BY:  SAMUEL RUDMAN
     EVAN KAUFMAN


DLA PIPER
     Attorneys for Defendants Lockheed Martin, et al.
BY:  JAMES WAREHAM
     JAMES E. ANKLAM
     JOHN HILLEBRECHT
```

```
 1              (Case called)
 2              THE DEPUTY CLERK:  City of Pontiac General Employees'
 3   Retirement System v. Lockheed Martin Corp.
 4              MR. RUDMAN:  Good afternoon, your Honor.
 5              Samuel Rudman, Robbins Geller Rudman & Dowd for the
 6   City of Pontiac.
 7              THE COURT:  Good afternoon.
 8              MR. KAUFMAN:  Good afternoon, your Honor.
 9              Evan Kaufman, Robbins Geller Rudman & Dowd on behalf
10   of the City of Pontiac.
11              THE COURT:  Good afternoon.
12              MR. WAREHAM:  Good afternoon, your Honor.
13              Jamie Wareham from DLA on behalf of Robert Stevens,
14   Linda Gooden, Bruce Tanner and Lockheed Martin Corporation.
15              MR. ANKLAM:  Good afternoon, your Honor.
16              James Anklam from DLA on behalf of the same group of
17   defendants.
18              THE COURT:  Good afternoon.
19              MR. HILLEBRECHT:  John Hillebrecht on behalf of the
20   same group of defendants.
21              Good afternoon.
22              THE COURT:  Good afternoon.
23              So this is a sad day because the parties have settled
24   this dispute, depriving me of the pleasure of seeing you try a
25   case in my court, but I suppose it is in the interests of
```

1  justice.

2          To get serious, I have reviewed your submissions, and
3  I agree preliminarily and subject, of course, to being
4  revisited at the time of the final hearing and applying the
5  nine so-called Grinnell factors to this settlement, it does
6  appear to be fair, reasonable and adequate.

7          I have a few picky problems with the proposed notice
8  and preliminary order and things of that sort and one maybe
9  slightly more substantive problem.

10         Let's start with the proposed order.  The schedule you
11 set forth there is too long.  It is a schedule that has been
12 used by other judges in other cases but I have taken to
13 shortening the schedule considerably.  For example, I think the
14 settlement hearing should be about 60 days from now, not 100
15 days.

16         I think the other dates have to be adjusted
17 accordingly, for example, I think the response to the notice
18 could be 30 days rather than 55 days.

19         There are other days that you need to work out.

20         MR. WAREHAM:  The CAFA, I think, requires a 90-day
21 period.  We have gone ahead and made CAFA notification to the
22 Attorney General and that is the timing in these particular
23 documents.  Some of these cases, there is no CAFA notice.  This
24 one, we wanted to take the precaution.

25         THE COURT:  I did not focus on whether -- does someone

1   have a copy of the relevant section of the CAFA that you are
2   referring to?
3            MR. ANKLAM:  It is 28, U.S.C., Section 1715.  It says
4   that it should be 90 days after the notice has been sent to the
5   Attorney General of the United States and the relevant state
6   authorities.
7            THE COURT:  Well, those Attorney Generals can't get
8   their act together.  So we need to abide by it, so it has to be
9   90 days.
10           MR. WAREHAM:  Your Honor, we have sent the notice, so
11  it is timed at 90 days from that date.  We have already started
12  that clock ticking.
13           THE COURT:  I am going to leave it to you to figure
14  out the dates, but basically I want the shortest possible
15  permitted by law, so work that out.
16           With respect to the notice that goes to the class
17  members, the basic problem I have with your notice is that, for
18  someone who is not a lawyer, it is really difficult to follow.
19  There are lots and lots of definitions.  It takes a while
20  before one gets to exactly what the options are.
21           You can contact my law clerk to get examples of
22  simpler notices that I have used in the last few months in
23  other cases, rather than my going through it item by item, but
24  that will give you an idea, but the general idea is to simplify
25  it.

1                One particularly problematic language that I wanted to
2     call to your attention is presently on page 19, although on
3     your revision, I hope it is much earlier, where you say in
4     boldface:  "If you are a class member you need do nothing
5     (other than timely file a proof of claim and release form) if
6     you wish to participate in distribution of the net settlement
7     fund.  Your interests will be represented by lead counsel."
8     But then you go on to say in solid caps:  "To participate in
9     the distribution of the net settlement fund, you must kindly
10    complete and return the proof of claim and release form that
11    accompanies this notice."
12              I fear that someone who is unsophisticated would think
13    that they don't have to do anything to participate.  And,
14    moreover, frankly, I don't see how anyone would choose not to
15    participate if they are not choosing to opt out.  Why would
16    they want to be a member of the class but not participate in
17    the distribution?  That would be weird.  So that's a good
18    example of language that needs to be fixed.
19              Now, with respect to attorney's fees, you are free, of
20    course, to request up to 33 percent -- of course, you are free
21    to request whatever you want, but I must say that seems, to me,
22    high.
23              And I just want to put you on notice that you will
24    have a lot of convincing to do before I approve 33 percent.
25    Every case is different.  This was a hard fought case.  I am

1  certainly not suggesting that this is a case for 5 or 10
2  percent and, of course, I will need to look at various factors
3  before I make a determination on legal fees.
4          So this doesn't affect what you are -- send it out
5  with 33 percent if you want to, but I don't want anyone to be
6  under the illusion that -- let me put it this way.  At present,
7  there is no better than a 33 percent probability that I will
8  award you 33 percent fees.  Anyway, there you are.
9          Going back to the notice for one minute, on page 1 --
10 I meant to mention it before -- you say, down towards the
11 bottom:  "It is estimated that if class members submit claims
12 for 100 percent of shares eligible for distribution, the
13 estimated average distribution per share would be approximately
14 56 cents before deduction for court-approved fees and expenses.
15 Historically actual claim rates are listed at 100 percent which
16 result in higher distribution or shared actual recovery from
17 this fund," etc., etc.
18         I think there should be in there an indication that,
19 if you are asking for 33 percent legal fees and up to million
20 dollars in expenses, that this would reduce the recovery to
21 whatever that is, roughly, two-thirds of 56 cents.  If I give
22 less than 33 percent, everyone will be delighted, the persons
23 getting this notice, but what I am concerned with is, again, an
24 unsophisticated reader thinks, I am getting 56 cents or
25 something close to it and then they get a lot less because of

1   all of the deductions.
2          Somewhere in there, I think there was some Latin like
3   *in custodia legis* or something like that.  I don't want to
4   demean your learnedness, but "legal custody" might be just as
5   good.
6          The last question I had, how could expenses be up to a
7   million dollars?
8          MR. RUDMAN:  Obviously, Judge, on final approval, we
9   will provide detailed expenses, but there was a tremendous
10  amount of travel in the case and, also, a tremendous amount of
11  experts.
12         THE COURT:  Again, I don't have to rule on any given
13  item right now, but that seemed to me kind of high.
14         How many experts did you have?
15         MR. RUDMAN:  We had three or four, Judge --
16  accounting, loss causation, damages and materiality.
17         I don't recall how many experts the defendants had,
18  but we also --
19         THE COURT:  That is not your --
20         MR. RUDMAN:  I am trying to figure out if it is
21  different or not.
22         THE COURT:  In terms of travel, I am reminded, in the
23  Dewey law firm bankruptcy, Judge Glenn issued an opinion -- you
24  might have seen it -- saying that he was not going to approve
25  any money for taxis because there is nothing wrong with the

1   subway.

2              That, of course, might not apply to people coming from
3   out of town.  I guess the functional equivalent, which I won't
4   stand on ceremony is, they could always take Greyhound rather
5   than fly.  But, for example -- and I am sure this won't be the
6   case -- I had a class settlement about four years ago in which
7   lead counsel who was from out of town stayed at the Four
8   Seasons New York at $1400 a night, and I know he was very
9   disappointed when I only approved $300 of that per night.

10             MR. RUDMAN:  Your Honor, I can assure you that before
11  we make a final application, the expenses will be thoroughly
12  vetted to make sure that there is none of that in the expenses.
13  I can also assure you that, inasmuch as it was a contingency
14  case and these were all hard dollars that we were laying out,
15  we were very careful to try to keep the expenses as low as we
16  could.

17             THE COURT:  Now, the final thing, and I can't remember
18  whether this is reflected in language anywhere, but it might
19  be -- I just wanted to put you on notice -- I will never
20  approve a settlement in which 100 percent or anything close to
21  100 percent of the legal fees are paid prior to distribution to
22  the class.  You are probably familiar with that.

23             MR. RUDMAN:  I am aware of that.

24             THE COURT:  50 percent.

25             Anything any of the parties want to raise?

```
     D3EUCITC
 1              MR. RUDMAN:  Nothing.
 2              MR. WAREHAM:  Nothing, your Honor.
 3              THE COURT:  So get me a revised copy as soon as you
 4   are able to.  And as soon as you get it to me, I will fill in
 5   the last couple of dates and get it signed and sent off.
 6              MR. RUDMAN:  Thank you, very much, your Honor.
 7
 8                          o   0   o
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```