UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
CITY OF PONTIAC GENERAL EMPLOYEES'   :
RETIREMENT SYSTEM, Individually and on:
Behalf of All Others Similarly Situated,:
                                     :
            Plaintiff,               :     11 Civ. 5026 (JSR)
                                     :
        -v-                          :
                                     :     ORDER APPROVING CLASS
LOCKHEED MARTIN CORPORATION, et al., :     ACTION SETTLEMENT
                                     :
            Defendants.              :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

By Order dated March 27, 2013, the Court preliminarily approved the parties' proposed settlement in the above-captioned case and established procedures for notifying potential settlement class members of the settlement, as well as for allowing class members to object to the settlement's terms. Pending now before the Court is the lead plaintiff's subsequent motion for (1) final approval of the settlement, (2) approval of the plan of distribution of settlement proceeds, and (3) an award of attorneys' fees, attorneys' expenses, and lead plaintiff's expenses. Full familiarity with all prior proceedings in this case is here presumed.

After full review of the parties' written submissions and oral arguments, as well as the correspondence sent to the Court by would-be objectors Daniel Himmel and James Clem, see ECF No. 136, the Court finds that the proposed settlement is fair, reasonable, and adequate, and grants the final approval of the parties' settlement. The Court also

awards certain attorneys' fees, attorneys' expenses, and lead plaintiff's expenses, although not in the full amounts requested.

The settlement here is for $19.5 million, and was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005). It still cannot be approved, however, unless it is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2). In the Second Circuit, a determination of whether such a settlement is fair, reasonable, and adequate requires a consideration of the nine "Grinnell" factors, see City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000), to wit: "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Grinnell, 495 F.2d at 463.

As to the first factor, there is no doubt that this litigation has been complex, and its remaining phases would likely be both hard-fought and expensive. The parties have already presented the Court

with complicated and challenging motions, and if the case were to proceed to trial, the additional expense of expert reports, possible pre- and post-trial motion practice, and a possible appeal would delay, and materially increase the already-considerable expense of, any eventual recovery.

As to the second factor, notwithstanding that more than 62,000 notices were mailed and publication of the proposed settlement appeared in national publications, not a single class member objected to the settlement.[1]

As to the third factor, the proposed settlement was negotiated after extensive discovery, motion practice, and several hearings before the Court.

As to the fourth factor, the numerous and complex issues of law and fact presented in the parties' motion practice make evident that plaintiffs face substantial risks in establishing liability.

As to the fifth factor, the reasons for the decline in the price of Lockheed shares, on which plaintiff's damages calculation is based, are controversial and controverted, presenting a substantial risk that plaintiffs' damages calculation would not prevail in the end.

As to the sixth factor, given that the defendants vigorously contested plaintiff's motion to certify the class, it is not unlikely

---

[1] The Court received a letter expressing "concern" from non-class-members Clem and Himmel. For the reasons stated in open Court, however, Messrs. Clem and Himmel lack standing to bring their objections. Moreover, the "carve-out" they request is without justification or merit. See Tr. of 6/4/13 at 2-3.

that, if the case continued, the defendants would continue to try to find infirmities with the class.

As to the seventh factor, while it is undoubtedly true that Lockheed could withstand a judgment of more than $19.5 million, the lawsuit would have to be much stronger than this one appears to be to make this a significant factor.

As to the eighth factor, while the recovery represents only approximately 10% of the plaintiff's best-case damages model, it is unlikely that, if the case were to go to trial, plaintiff would recover its best-case model.

As to the ninth factor, given the weaknesses in plaintiff's case, the proposed settlement is well within the range of reasonable outcomes.

In short, all or nearly all of the Grinnell factors weigh in favor of approval of the settlement, and the Court therefore approves it.

Turning to attorneys' fees, plaintiff's counsel seeks an award of 33% of the settlement fund, as well as $1,000,000 to cover its expenses in bringing this action. The determination of what is a reasonable attorneys' fee in this context is guided by the factors set forth by the Second Circuit in Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir.2000). These factors are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Id. While it is the analysis of these six factors that

4

ultimately undergirds the Court's fee award, two methods of determining reasonable fee awards can be used as heuristics, though neither is dispositive: a) the so-called "lodestar" method, "under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate," and b) the "simpler" method of "set[ting] some percentage of the recovery as a fee." See id. at 47. However, "[i]t bears emphasis that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." Id.

Here, while the "lodestar" method arguably supports plaintiff's counsel's percentage request, closer analysis raises some questions. For example, plaintiff's counsel included in the calculation some 3,323.15 hours of work by so-called "contract attorneys," billed at rates ranging from $295 to $435 for tasks that consisted largely of document review. See Tr. of June 4, 2013, at 11-12. While the use of "contract" attorneys is not suspect per se, and while it is beyond cavil that law firms may charge more for contract attorneys' services than these services directly cost the law firm, the Court questions the reasonableness of a mark-up of these contract attorneys' rates to $295 to $435 per hour. This is not because these attorneys are not qualified; indeed, at the Court's request, plaintiff's counsel provided information attesting to the high quality of many of these contract attorneys. But a sophisticated client, knowing these contract attorneys cost plaintiff's counsel

5

considerably less than what the firm's associate attorneys cost (in terms of both salaries and benefits) would have negotiated a substantial discount in the hourly rates charged the client for these services. Indeed, assuming that these attorneys cost plaintiff's counsel $60 per hour, the blended mark-up of their rates in connection with this fee application added $956,490.75 to the lodestar plaintiff's counsel provided the Court to "cross-check" their request for 33% of the common fund in fees, whereas a sophisticated client could have negotiated a total of, say, half that amount, or less.

Turning more generally to the Goldberger factors, the Court has no trouble concluding that this litigation was complex, risky, and made substantial demands on counsel's time; but the percentage return to the class was modest. Moreover, the work of plaintiff's counsel, while generally excellent, included at least one material misstatement in plaintiff's complaint that caused the Court considerable concern. See Memorandum of July 9, 2013 at 8. Overall, a balancing of all relevant factors only justifies a fee award at the increasingly used benchmark of 25%. See Goldberger, 209 F.3d at 51-52; see also Theodore Eisenberg & Geoffrey P. Miller, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008, 7 J. Empirical Legal Stud. 245, 262 (2010) (reporting a mean fee-to-recovery ratio in securities class actions of 23% and a median of 25%).

As for expenses, a number of claimed expenses must be deducted from plaintiff's counsel's requested expense award of $1,000,000. These

include an excessive charge of $.25 per page for copying a vast number of documents (when $.10 per page is the most that can be justified), as well as charges included for attorneys' fees incurred by plaintiff's investigator, L.R. Hodges, in connection with the Court's evidentiary hearing regarding the "recanting" witnesses -- an expense which, as the Court remarked at the hearing, was something of a self-inflicted wound. See Tr. of June 4, 2013, at 20-23. For the same reason, the Court excludes from its expense award $56,181.34 that Robbins Geller requested to compensate it for the legal fees it paid to Francis Karam to represent several of the confidential witnesses in connection with depositions and the Court's evidentiary hearing. Moreover, after the Court brought several of these items to plaintiff's counsel's attention at the June 4th hearing, plaintiff's counsel, in the course of providing further detail, identified $3,774.25 in travel expenses that should not have been included in counsel's initial application. See Suppl. Decl. of Samuel Rudman, ECF No. 143, at 2. After deducting from the $1,000,000 application $20,788.20 in excess photocopying expenses, $200,412.73 in L.R. Hodges's and several of the confidential witnesses' attorneys' fees, and the $3,774.25 in erroneous travel expenses, the Court determines that a total award of $775,024.82 in expenses is reasonable in this case.

As to lead plaintiff's own request for an award of $2,264.20 to cover its own costs of complying with discovery requests, depositions, and monitoring and approving the proposed settlement, the Court notes

that this modest reimbursement of plaintiff's costs is reasonable, appropriate, and is consistent with providing lead plaintiff an incentive to participate in the active supervision of its counsel. See Varljen v. H.J. Meyers & Co., No. 97 Civ. 6742 (DLC), 2000 WL 1683656, n.2 (S.D.N.Y. Nov. 8, 2000); 15 U.S.C.A. § 78u-4 (permitting the award to a plaintiff of reasonable costs and expenses "directly relating to the representation of the class to any representative party serving on behalf of a class").

For the foregoing reasons, the Court hereby grants final approval of the proposed settlement, awards lead counsel attorneys' fees of 25%, awards lead counsel expenses of $775,024.82, and awards lead plaintiff expenses of $2,264.20. The Clerk of the Court is directed to enter final judgment. However, the Court will retain jurisdiction for the limited purpose of enforcing the terms of the settlement agreement and the terms of the foregoing awards.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 23, 2013